**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JOHN ZINK COMPANY, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. CIV-11-90-R |
| | ) |
| **INDUSTRIAL BOILER AND** | ) |
| **MECHANICAL, CO., INC.,** | ) |
| | ) |
| **Defendants.** | ) |

# ORDER

This matter comes before the Court on the Motion for Summary Judgment, filed by Plaintiff, John Zink Company, LLC., pursuant to Federal Rule of Civil Procedure 56. Defendant responded in opposition to the motion. Having considered the parties' submissions, the Court finds as follows.

In 2004, Plaintiff and Defendant entered into a Distributorship Agreement whereby Defendant accepted an appointment as the exclusive authorized distributor of all John Zink manufactured Gordon-Piatt brand catalogued products for the state of Georgia. Pursuant to the agreement Defendant was appointed the exclusive distributor and was obligated to use its best efforts to promote, sell and distribute the product. Defendant was required to cooperate with John Zink in marketing of the product, to maintain inventory, and have properly trained staff, equipment and facilities to carry out its distributorship obligations. John Zink's obligations included using reasonable efforts to supply the products ordered by Defendant and providing current literature and operating data. The agreement provided that

Defendant's compensation would be derived from resale of the Zink products. The Distributorship Agreement also contained an indemnity clause:

> 15. **Indemnification**. DISTRIBUTOR SHALL TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAWS, AT ITS OWN COST AND EXPENSE, DEFEND, INDEMNIFY AND HOLD HARMLESS JOHN ZINK AND ITS AFFILIATES, SUBSIDIARIES, OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (COLLECTIVELY, "INDEMNITEES"), AGAINST ALL DAMAGES, LOSSES, COSTS, CLAIMS, STRICT LIABILITY CLAIMS, LIENS, ENCUMBRANCES, LIABILITIES, AND EXPENSES, INCLUDING ATTORNEYS' FEES, (COLLECTIVELY, "DAMAGES/LIABILITY") ARISING OUT OF OR RESULTING FROM DISTRIBUTOR'S ACTS OR OMISSION OR THIS CONTRACT, REGARDLESS OF WHETHER SUCH DAMAGES/LIABILITY ARE CAUSED BY THE NEGLIGENCE OF INDEMNITEES, BUT EXCLUDING DAMAGES/LIABILITY TO THE EXTENT CAUSED BY THE SOLE NEGLIGENCE OF THE INDEMNITEES.

In 2005 the agreement was modified to increase the geographic scope of Defendant's exclusive territory.

On January 14, 2008, an accident occurred at the Pilgrim's Pride Poultry Processing Plan in Gainesville, Georgia. The accident occurred while Defendant's employee, Marc Beck, was performing work on boiler #2 at the Pilgrim's Pride plant, which was equipped with a Gordon-Piatt burner manufactured by John Zink. The work was being performed pursuant to a 2005 contract between Industrial Boiler and Mechanical and Pilgrim's Pride. The boiler, which was equipped to operate on either natural as or Number 2 fuel oil, was being converted to run on Number 2 fuel.. Unbeknownst to Mr. Beck, a prior sub-contractor of Defendant Industrial Boiler and Mechanical, had reversed the supply and return lines on the burner, causing it to intake vast quantities of fuel, which ultimately exploded due to the

heat of the boiler. The Georgia Department of Labor's investigation indicated:

> Completed laboratory tests have identified that the #2 fuel oil burner input and return piping were reversed, and that the nozzle screens were partially clogged. In those laboratory tests it was identified that these conditions combined to crate "atomization was noted as being less than optimal with extensive streaming of fuel and a delivery rate 10 times that for the same nozzle being plumbed properly." This input spray of fuel went beyond the igniter zone, resulting in excess fuel accumulation. After 4 or 5 attempts the latent heat of the boiler surface, approximately 350 degrees, apparently caused enough vaporization of the oil that it reached the igniter zone and resulted in ignition of the excessive amount of vapor (the explosion).

Mr. Beck was severely injured in the accident. It is undisputed that Mr. Beck failed to follow company policies and procedures or industry standards and procedures on January 14, 2008, which contributed to the accident.

Thereafter Plaintiff Zink was sued in state court in Georgia in two separate actions, one by Pilgrim's Pride, for damage to their facility, and one by Marc Beck's mother, on his behalf. The underlying state court litigation alleged, in both cases, that John Zink Company was strictly liable for defective design and manufacture of the Gordon Piatt burner, because the oil inlet and oil return connections were identical and not clearly marked "supply" and "return," which made it possible for the lines to be reversed. Plaintiffs in both cases also alleged breach of warranty and negligence by John Zink. Defendant Industrial Boiler and its employee were alleged to have been negligent in performing maintenance on the boiler in the suit by Pilgrim's Pride.

Plaintiff seeks to recoup from Defendant the costs of defending and settling the state court actions and for the cost of pursuing indemnification in this action. Defendant contends

that the incident upon which both state court actions was premised was not related to its Distributorship Agreement with Plaintiff, and therefore, the provisions of the indemnity clause do not apply. The parties raise additional arguments in support of their respective contentions, but because the Court concludes that the claims pursued in the state court actions fell outside the scope of the Distributorship Agreement, it need not consider those arguments.

Agreements to indemnify a party against its own negligence or liability are strictly construed. *See Transpower Constructors v. Grand River Dam Auth.*, 905 F.2d 1413, 1420 (10th Cir.1990) (applying Oklahoma law). "To be enforceable, the agreement must meet the following three conditions: (1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's-length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy." Id. (citing *Fretwell v. Protection Alarm Co.*, 1988 OK 84, ¶ 12, 764 P.2d 149, 152). *Noble Steel, Inc. v.. Williams Brothers Concrete Const.*, 49 P.3d 766 (Okla.Civ.App. 2002)).

In a letter dated September 20, 2010, demanding indemnity from Defendant, Plaintiff's counsel noted that "[i]t is undisputed that at the time of the accident Mr. Beck was working on a Gordon-Piatt brand burner in the course and scope of his employment for Industrial Boiler as the Distributor's designated agent and employee, Mr. Beck's acts or omission were those of Industrial Boiler." The shortcoming in this theory, which mirrors Plaintiff's summary judgment argument, is that the Gordon-Piatt burner upon which Mr. Beck was performing maintenance was not distributed by Defendant, it was not originally sold or installed at the Pilgrim's Pride facility by Defendant or pursuant to the Distributorship

Agreement between Plaintiff and Defendant.[1]  The evidence presented indicates Mr. Beck was not utilizing Gordon-Piatt parts on the work he was performing, and the work was being done pursuant to an entirely separate and independent contract between Industrial Boiler and Pilgrim's Pride.[2]  "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."  Okla. Stat. Tit. 15 § 164.  In this case, the facts established do not indicate that Defendant was engaged in any work under the 2004 or 2005 Distributorship Agreement at the time of the accident or that Mr. Beck's work was even relevant to the Distributorship Agreement.  Plaintiff acknowledges Defendant's contention that because the burner was sold prior to execution of the Distributorship Agreement, that it is excluded from coverage thereunder.  Plaintiff contends however, that because the Distributorship Agreement "expressly contemplated IB&M's sale of replacement parts, which inevitably would be used to service burners" and because "IB&M installed these replacement parts," that the indemnity provision of the contract applies.  Reply at p. 3.  As noted above, however, there is no evidence that any replacement parts distributed by Defendant under the Distributorship Agreement were involved in the 2008 accident such that the claims could conceivably fall under the umbrella

---

[1] The burner was originally installed on one boiler and in 2005 or 2006 it was removed from that boiler and installed on the #2 boiler.  The reinstallation of the old burner was undertaken by a sub-contractor of Defendant Industrial Boiler.

[2] Mr. Beck's notes indicate he was using Asco parts.

of the Distributorship Agreement.[3] Additionally, there is nothing in the contract to indicates that the parties contemplated that Defendant would actually be servicing boilers and burners with Plaintiff's parts, rather than merely selling Plaintiff's parts.[4] Regardless, there is no evidence that a single part or component distributed pursuant to the Distributorship Agreement was involved in the 2008 accident. To enforce the provisions as suggested by Plaintiff would required the Court to remove the indemnity provision from its context within the Distributorship Agreement, making Defendant's presence under its Pilgrim's Pride contract at the time of the accident fortuitous for the Plaintiff.

Because there is no evidence that Defendant was functioning in its capacity as distributor under the agreement at the time of Mr. Beck's injuries, i.e. it sold and installed the wrong part to Pilgrim's Pride which part caused Mr. Beck's injuries, and because there is no evidence that the product manufactured by Plaintiff and alleged by the two plaintiffs in the underlying state court litigation to be defective was part of either the 2004 or 2005 Distributorship Agreement, the Court finds that Defendant is entitled to summary judgment as requested in its sur-reply in response to Plaintiff's motion, and that Plaintiff's Motion for

---

[3] In an affidavit attached to the Reply brief Plaintiff's employee Casey Chambers indicates that in 2006 Defendant received a combustion head and components and blower wheel and components from Plaintiff for the burner involved in the 2008 accident. There is, however, no allegation or evidence that these parts or the installation of these parts was implicated in the accident.

[4] The only even remotely related provision of the Distributorship Agreement provided that Defendant was obligated to maintain "sufficient and properly trained staff, equipment and facilities to carry out its obligations under this Agreement." The Agreement, however, called for the sales of product supplied by John Zink, not performance of any work. Accordingly, it would be Defendant's responsibility to sell the appropriate parts manufactured by Plaintiff, not to actually perform service with those parts. Defendant was required to "use its best efforts to promote, sell and distribute Products within the Sales Territory to its fullest possible potential." Nothing in the Agreement extends beyond sales.

Summary Judgment should be denied. The broad language of the indemnity provision cannot extend beyond the contract of which it is a part, and accordingly, Plaintiff's motion for summary judgment is DENIED.

For the reasons set forth herein, Plaintiff's motion for summary judgment is DENIED, and summary judgment will be entered in favor of the Defendant.

IT IS SO ORDERED this 7th day of June, 2012.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE